19    441
75    460

## Wm. H. Keeling v. P. H. Kuhn.

1. Excepting to Instructions; *Saving Errors, for Review.* Where one of the questions in the case is, the construction to be given to a license, and the court submits in its charge the matter of construction to the jury, and at the close of the charge inquires if there are any exceptions, and is answered by the defendant, "Only in the construction of the license; I take it that it is a matter for the court to construe the license," and the record fails to show whether the court changed its charge, or otherwise noticed or acted upon this suggestion, and fails to show affirmatively that all the instructions given are preserved, and further recites that defendant excepted to "the refusal of the court to give instructions so asked explaining the license," and no such instructions so asked and refused appear in the record, *held*, that the rulings of the court are not so preserved by exceptions as to be available here for review.

2. License, *To Enter Upon Lands.* The respective rights and liabilities of land-owner, of licensee, and of tenant of such licensee, considered, and discussed.

*Error from Leavenworth District Court.*

Action by *Kuhn*, to recover rent alleged to be due from *Keeling* for the use and occupation of a certain dwellinghouse for the period of fifteen months, from 1st October 1873 to 31st December 1874. The rent claimed to be due had ac-

crued in favor of one Henry Kuhn, and he had assigned his claim to *P. H. Kuhn*, the plaintiff. Trial at March Term 1875. Verdict and judgment for plaintiff for $285.59, and defendant *Keeling* brings the case here.

*D. G. Swain*, and *J. W. English*, for plaintiff in error.

*H. M. Herman*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action to recover rent. The plaintiff's assignor testified to a full, unconditional contract of lease, delivery of possession to, and occupation by, the tenant. The jury found in favor of the plaintiff. Upon this therefore the judgment would have to be sustained.

The other matters upon which the defendant, plaintiff in error, claims that the judgment was wrong are these: The house, the subject of the contract, was upon the military reservation of Fort Leavenworth. It was built in 1863 by the assignor of the plaintiff, Henry Kuhn, and occupied by him continuously until turned over to the defendant in October 1873. It was built under a permit from the military authorities. And the defendant claims that the license granted by the authorities had been revoked, Kuhn notified to remove the building, and that failing so to do, the building had become the property of the United States. Upon the question of this license, the court left it to the jury to say whether the license was to continue as long as Kuhn was in the employ of the government, during the mere pleasure of the authorities, or as long as the building should last. Counsel claims that the court should have construed the license itself, as a question of law, and that its failure so to do was error compelling a reversal. As the record now stands it seems to us the action of the court in this respect is not so preserved that we can declare there was error. At the close of the charge the record shows that the court asked the plaintiff if he had any exceptions to it, and was answered in the negative. A like query was put to the defendant, and was

answered thus: "Only in the construction of the license; I take it that it is a matter for the court to construe the license —for the court to settle, and not the jury. From the very nature of the case, it must be such a permission as must be construed by the court as a matter of law, and the court should determine the character of the license itself." Whether the court after this claim of counsel was made recognized its correctness, and gave further charge to the jury, the record does not disclose. It nowhere appears that all the instructions are preserved. Further than that, the record reads: "To the refusal of the court to give instructions asked explaining the license, defendant excepted at the time, and excepts." But the record contains no instructions so asked and refused. We are not advised by anything in it what construction the learned counsel claimed to the district court should be put upon the license; nor does it affirmatively appear that the court did not respond favorably to whatever claim counsel made in this respect. How then can we hold that it erred ?

Outside of this question of practice, we concur in the main with the views expressed by the counsel for plaintiff in error in their brief. Mr. Kuhn by his permit obtained no interest in the soil. The building was personal property belonging to him. All his rights arose by virtue of the license; and he who claims rights through a license must show the terms and extent of that license, or it will be held to be merely one revocable at pleasure. The original permit was not in evidence; but in lieu thereof was a letter from Gen. Easton, the chief quartermaster, written sometime two years thereafter, stating that he had at the time given Mr. Kuhn a permit to build the house. There is nothing in that, or in any of the testimony, from which it could be inferred that the license was other than one revocable at pleasure, certainly at least after the termination of Kuhn's employment in the government service. Upon the revocation of a license, the building does not become forfeited to the land-owner, but the licensee has a reasonable time in which to remove it from the prem-

ises. What is such reasonable time, is a question of fact for the jury, and may vary with the size and condition of the building to be removed, the time of the year, the condition of the weather, the distance to be moved, etc. The landowner cannot himself prescribe the time within which the removal must be made, so as to preclude all inquiry as to its reasonableness. If the licensee fails to remove the building within such reasonable time, he will lose his rights in it, and it will become forfeited to the land-owner, unless such failure to remove arise from some fault of the land-owner. Of course, if the latter interfere directly or indirectly to prevent a removal, he can claim nothing on account of the failure to remove. Notwithstanding a revocation of the license, and notice to remove, the land-owner may consent thereafter to the buildings remaining upon the land, and to its lease, or other use for the benefit of the licensee; and whoever leases the building and obtains possession thereof under representations that such consent has been obtained, will be liable to the licensee for the rent, although no such consent was in fact obtained, until at least such reasonable time after the latter has ascertained the mistake as will enable him conveniently to obtain possession and remove the building. It may possibly be that the last proposition would uphold the judgment in this case upon the testimony, giving credit in accord with the verdict of the jury to the testimony of Kuhn rather than to that of Keeling, or at least justify a judgment for a portion of the rent sued for; but we need not definitely determine that question, as the matters heretofore noticed are decisive. Though to avoid any misunderstanding it may be proper to say, that even according to Mr. Kuhn's testimony the time for which he has recovered rent was ample to have enabled him, after the discovery of the mistake, to have asserted his rights to the possession as against Keeling, and that any further rights he may have in the premises, if any, are between him and the government.

The judgment will be affirmed.

All the Justices concurring.